UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **401K SAFE LLC,** | } | |
| | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| | } | |
| | } | |
| v. | } | Case No.:  2:20-cv-00300-MHH |
| | } | |
| | } | |
| **PINNACLE FINANCIAL SERVICES, INC.,** | | |
| | | |
| **Defendant.** | | |

## MEMORANDUM OPINION

In this breach of contract lawsuit, 401k Safe, LLC, a plan administrator for dozens of 401k plans, has sued Pinnacle Financial Services, Inc.  Pinnacle provides administrative services on behalf of 401k Safe.  It is undisputed that Pinnacle began contacting plan sponsors to ask the sponsors to contract directly with Pinnacle, circumventing 401k Safe.  401k Safe contends that Pinnacle's conduct violates a non-solicitation provision in the agreement that governs the relationship between 401k Safe and Pinnacle.  Pinnacle denies that its conduct violates the provision and

1

contends that it is free to solicit plan sponsors so long as it does not do so as a plan administrator.

Early in the case, this Court held hearings, (minute entry 03/05/2020; minute entry 03/09/2020), and entered a TRO to protect plan sponsors impacted by the parties' disagreement, (Doc. 5, p. 2).[1]  Pinnacle asked the Court to order 401k Safe to post a bond in relation to the TRO, (Doc. 7), and the Court ordered 401k Safe to post a $100,000 bond.  (Doc. 14).  Less than three weeks after imposing the restraining order, after an evidentiary hearing, the Court dissolved the order.  (Doc. 33).

Pinnacle wishes to recover against the bond, (Doc. 38), and Pinnacle has asked the Court to dismiss 401k Safe's lawsuit, (Doc. 37).  Pinnacle seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the company is not subject to personal jurisdiction in this district, and pursuant to Rule 12(b)(6) for failure to state a viable claim.  Alternatively, Pinnacle asks the Court to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  (Doc. 37).  This opinion resolves Pinnacle's motions and proceeds in three parts.  Part I provides factual and procedural context for the motions.  Part II explains the law surrounding Pinnacle's request to recover

---

[1] Evidence showed, for example, that Pinnacle had not provided non-discrimination test results that a plan sponsor required to meet IRS requirements.  (Doc. 45, pp. 33-34).

2

against the bond and applies the law to the facts here.  Part III discusses the law of transfer and applies the law to the relevant facts.

## I.

A 401(k) plan is "a qualified profit-sharing plan that allows employees," for purposes of retirement, "to contribute a portion of their wages to individual accounts" on a tax-deferred basis.  INTERNAL REVENUE SERVICE, 401(K) PLANS, https://www.irs.gov/retirement-plans/401k-plans, (last visited Mar. 15, 2021).  Those involved in the administration of a 401(k) retirement investment plan typically have defined roles and responsibilities.  The "plan sponsor" -- the employer -- and the plan administrator are fiduciaries.  (Doc. 45, pp. 27-28).  Plan administrators ensure that employers who sponsor retirement plans "are in compliance with the requirements of the plan as written and with the law so that if any change needs to be made to the plan to conform it to the law," the employer can do so.  (Doc. 45, pp. 41-42).  Third-party administrators perform administrative services for plans.  (Doc. 45, p. 28; *see also* Doc. 1-1, p. 6, ¶ 12).  These services include allocating contributions from payroll to 401(k) plans, processing employee requests for loans against their retirement accounts, and preparing IRS Form 5500 containing information about the plan.  (*See* Doc. 45, pp. 28, 31-32; Doc. 1-1, pp. 6-7, ¶ 19).  A recordkeeper maintains the actual investment accounts.  (Doc. 45, pp. 30-32).  A broker is another service provider for a 401(k) plan.  (Doc. 45, p. 38).

401k Safe, an Alabama limited liability company, is a plan administrator. (Doc. 1-1, p. 3, ¶ 1; Doc. 1-1, p. 5, ¶ 11).  Pinnacle, a Florida corporation, is a third-party administrator. (Doc. 1-1, p. 3, ¶ 2; Doc. 1-1, p. 3, ¶ 10(C)).  401k Safe contracted with Pinnacle to perform third-party administrator duties for retirement plans for which 401k Safe served as plan administrator.  (Doc. 1-1, p. 6, ¶ 12).

In February 2020, 401k Safe and Pinnacle accused each other of breach of contract.  Pinnacle asserted that "401k Safe and its principals conspired with the prior owners of [Pinnacle]" to defraud Pinnacle's new owner "therefore committing a breach of good faith and relieving [Pinnacle] of its [contractual] obligations . . . ." (Doc. 1-1, p. 7, ¶ 21).  Pinnacle also said that 401k Safe "engaged in 'unlawful communications to certain customers of [Pinnacle],' that the non-solicitation provision of the [parties'] agreement somehow does not apply to 401k Safe's clients, and that because of the alleged misrepresentations regarding the non-solicitation [Pinnacle] is relieved of its duty to perform under the [parties'] agreement."  (Doc. 1-1, p. 8, ¶ 25).  According to 401k Safe, Pinnacle began contacting 401k Safe clients to discuss Pinnacle's continued work for them and to notify the sponsors that they would incur additional expense if they discontinued Pinnacle's administrative services.  (Doc. 1-1, p. 9, ¶ 27).

401k Safe contends that Pinnacle's direct contacts with 401k Safe's clients violated the non-solicitation provision in the parties' contract. (Doc. 1-1, p. 9, ¶ 29). 401k Safe also alleges that Pinnacle's conduct in refusing to provide certain services to 401k Safe's clients harmed those plan sponsor clients. (Doc. 1-1, p. 9, ¶ 33). 401k Safe asks that Pinnacle "be enjoined from conditioning its 2019 year end work for the Plans on additional payment," and also "be enjoined from additional solicitation contacts with clients of 401k Safe until one year after a termination of the [parties'] Agreements." (Doc. 1-1, p. 11). 401k Safe also seeks declaratory relief and damages. (Doc. 1-1, p. 11).

Pinnacle removed this case from state court to federal court on March 5, 2020. (Doc. 1, p. 1). The Court held a telephone hearing the same day, noting that while it was pending in state court, the case had been set for a hearing on 401k Safe's request for a temporary restraining order. (Doc. 40, p. 3). After hearing argument, the Court asked the parties to confer and reach agreement on a status quo arrangement that would govern the parties' conduct until the Court could hold a full hearing on 401k Safe's TRO request. (Doc. 40, p. 17).

After the parties were unable to agree to terms, the Court issued a status quo TRO "to prevent harm to the non-party plan sponsors that require the services that 401k Safe and Pinnacle provide." (Doc. 5, p. 2). The TRO stated:

1. The parties shall continue to service plan sponsors in accordance with their agreement and their obligations to the plan sponsors;

2. Pinnacle shall not contact 401K Safe plan sponsors to propose separate contracts and shall not communicate with plan sponsors regarding the potential termination of the agreement between 401K Safe and Pinnacle;

3. 401K Safe shall not assign third-party administrative duties that Pinnacle provides to Benefit Professionals, Inc. without approval from the Court;

4. The parties shall mediate.  In mediation, the parties shall develop a plan to ensure that there is no lapse in service to plan sponsors while the parties resolve their disputes concerning their contractual relationship.  Within three days of the conclusion of the mediation, the parties shall file a joint status report.

(Doc. 5, p. 2).  Pinnacle asked the Court to require 401k Safe to post a bond upon entry of the TRO, (Doc. 7), and the Court directed 401k Safe to post a $100,000 bond, (Doc. 14).  On March 25, 2020, 401k Safe posted a bond, which the Clerk of Court approved on March 26, 2020.  (Docs. 27, 28).  Less than one week later, the Court dissolved the temporary restraining order.  (Doc. 33).

## II.

On the record in this case, Pinnacle is not entitled to recover on the bond that 401k Safe posted to secure the brief temporary restraining order in this case. "Under Federal Rule of Civil Procedure 65(c), an injunction bond provides security for 'such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.'" *Milan Exp., Inc. v. Averitt Exp., Inc.*, 254 F.3d 966, 981 (11th Cir. 2001) (quoting FED. R. CIV. P. 65(c)). "To recover against an injunction bond, a party must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction." *Milan Exp., Inc.*, 254 F.3d at 981.

The TRO that the Court issued in this case restricted the conduct of both 401k Safe and Pinnacle; neither party was wrongfully enjoined. District courts have wide discretion to grant an early injunction. *See United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983). In deciding whether to enter an injunction, a district court must consider whether there is a substantial likelihood of success on the merits, whether a substantial threat of irreparable injury exists if the injunction is not granted, whether the threatened injury to the movant outweighs the harm an injunction may cause the non-movant, and whether granting an injunction will harm the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). A TRO preserves the status quo. *See U.S. v. Kaley*, 579 F.3d 1246, 1264

(11th Cir. 2009) (Tjoflat, J., specially concurring) ("TROs are 'designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction.'") (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2951, at 253 (2d. ed. 1995)).

The Court does not believe that it erred in temporarily enjoining both parties from engaging in conduct that was potentially detrimental to plan sponsors, the non-parties caught in the middle of the parties' dispute. (Doc. 5; Doc. 40, pp. 16-17). The Court ordered 401k Safe and Pinnacle to "continue to service plan sponsors in accordance with their agreement and their obligations to the plan sponsors." (Doc. 5, p. 2). Pinnacle was restrained from contacting 401k Safe plan sponsors to "propose separate contracts" or discuss "the potential termination of the agreement between 401k Safe and Pinnacle," and 401k Safe was restrained from assigning Pinnacle's administrative duties to Benefit Professionals, Inc. "without approval from the Court." (Doc. 5, p. 2). The Court instructed the parties to "develop a plan to ensure that there is no lapse in service to plan sponsors while the parties resolve their dispute concerning their contractual relationship." (Doc. 5, p. 2). As the Court explained in the March 9, 2020 hearing in this matter, its "overriding concern" was the fact that the 401k plans that the parties serviced were "caught in the middle of this divorce, and we need to make sure that they are protected . . ." (Doc. 41, pp. 3–

8

4). "The bottom line" was protecting the plans and the plan sponsors until 401k Safe and Pinnacle could determine how plan administration would go forward so that the administrative functions that Pinnacle was performing and the documentation that Pinnacle was obligated to provide to plan sponsors was "available to the plans and the plan sponsors so that they are not harmed by the disagreement between [Pinnacle] and 401k Safe." (Doc. 41, p. 9).

Immediately after an evidentiary hearing on March 30, 2020, the Court dissolved the TRO, stating: "To the extent that [Pinnacle] is interfering in 401k Safe's contractual relationships and damaging those or vice versa, those are issues that can be resolved with damages. So I'm going to go ahead and lift the injunction, and we will deal with the lawsuit going forward in the framework of a potential damages award as opposed to early injunctive relief." (Doc. 45, pp. 106–07).

Pinnacle argues that the TRO "eliminated" the company's "ability to communicate with plan sponsors, resulting in 401k Safe disrupting the *status quo*." (Doc. 38, p. 12). According to Pinnacle, while it was "restrained from communicating [with] those plans, 401k Safe was able to dismantle, 'piece by piece,' [Pinnacle's] customer base, presumably in favor of other TPAs, such as BPI." (Doc. 38, p. 12) (quoting Doc. 15, pp. 4–5). But Pinnacle was not restrained from communicating with the plans. To the contrary, under the Court's order, Pinnacle was obligated to communicate with the plan sponsors to the extent necessary to

9

fulfill Pinnacle's obligations to the plans. The Court only restricted Pinnacle's ability to "contact 401k Safe plan sponsors to propose separate contracts" and "communicate with plan sponsors regarding the potential termination of the agreement between 401k Safe and Pinnacle." (Doc. 5, p. 2). The Court likewise restricted 401k Safe from "assigning third-party administrative duties that Pinnacle provides to Benefit Professionals, Inc. without approval from the Court." (Doc. 5, p. 2). The brief, limited restraints that the Court imposed on both parties rest on solid footing in the record.[2] Therefore, Pinnacle is not entitled to collect on the bond.[3]

---

[2] Even if the Court erred in restraining the parties for 20 days until the Court could hold an evidentiary hearing, evidence indicates that the injuries that Pinnacle attributes to the brief order developed long before the Court entered the picture. The record demonstrates that some plan sponsors independently sought other third-party administrators because of the quality of service they received from Pinnacle. In a March 26, 2020 email, the CEO of one plan sponsor, Hankins, Inc., explained that it sought quotes for a new TPA in 2019 because of "the long history of issues with Pinnacle" that "pushed us to consider changing TPAs." (Doc. 46-8, p. 1). During the March 30 evidentiary hearing, Amy Barnett, the director of administration for Primary Care Development Corporation, another plan sponsor, testified that PCDC had experienced service issues with Pinnacle and that late in 2019, PCDC asked its broker to "bring some recommendations for other third-party administrators that we could consider . . ." (Doc. 45, pp. 29, 37-38). That Theodore Key, Pinnacle's national sales manager, could not mend these relationships after the Court vacated the TRO, ((Doc. 53-1), tells the Court nothing because the Court's order requiring Pinnacle to fulfill its obligations to the plan sponsors should have helped, not harmed, Pinnacle's relationship with those sponsors.

[3] Pinnacle argues that it is entitled to recover on the bond because of the allegedly "purposefully misleading" representations of James Sharp, a 401k Safe Vice President and Plan Trustee. Pinnacle argues that Mr. Sharp misled the Court when he "swore that 401k Safe and the plans it serviced required immediate, injunctive relief due to a strict July 31, 2020, deadline for the plans to complete year-end paperwork." (Doc. 38, p. 3) (citing Doc. 15-1, p. 3, ¶ 7). Citing testimony from the March 30 evidentiary hearing, Pinnacle argues that Mr. Sharp was "disingenuous" in his affidavit because "the deadline to complete year-end work was not – as [Mr.] Sharp had represented – July 31, 2020, but at some later point." (Doc. 38, p. 4). But Mr. Sharp signed his

### III.

Pinnacle has made a persuasive argument in favor of transfer of this action from this district court to the United States District Court for the Southern District of Florida. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

401k Safe could have filed its complaint against Pinnacle in the United States District Court for the Southern Division of Florida. Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Pinnacle is a Florida corporation, and Pinnacle maintains its principal place of business in the Southern District of Florida. (Doc. 37, p. 15) (citing Doc. 1-1, p. 188); (Doc. 1-1, p. 3, ¶ 2; Doc. 1-1, p. 3, ¶ 10(C)). Consequently, the Southern District of Florida is a permissible venue under § 1391.

The Eleventh Circuit has identified several factors that a court should consider when deciding whether to transfer venue under § 1404, including the convenience

---

affidavit on March 20, 2020. (*See* Doc. 15-1, p. 3). Because the Court entered the TRO on March 10, 2020, the Court did not rely on Mr. Sharp's affidavit. The same is true of Pinnacle's argument that Mr. Sharp's assertion in his affidavit that neither 401k Safe nor any of its members had an ownership interest in a TPA was misleading. (Doc. 38, p. 5).

of the witnesses; the location of relevant documents and the relative ease of access to sources of proof; the convenience of the parties; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; the relative resources of the parties; a forum's familiarity with the governing law; the weight accorded a plaintiff's choice of forum; and trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Unless the parties have contractually agreed to a valid choice of forum provision, "the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989). "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

A review of these factors shows that transfer to the Southern District of Florida is warranted. The locus of operative facts factor weighs in favor of transfer. According to Mr. Key, Pinnacle does not maintain an office in Alabama, its employees do not reside in Alabama, it does not solicit business in Alabama, its employees do not travel to Alabama to conduct Pinnacle's business, all its books and records are in Florida, and it conducts all business operations from Florida. (Doc.

37-1, pp. 3-4, ¶¶ 4-6, 11-12).[4]  According to Pinnacle, its entire business relationship with 401k Safe is centered in Florida.  401k Safe traveled to Florida to solicit Pinnacle in 2013.  (Doc. 37-1, p. 4, ¶ 15).  Since 2013, 401k Safe representatives "have attended numerous in-person meetings" at Pinnacle's Florida office.  (Doc. 37-1, p. 5, ¶18).  Because 401k Safe sought Pinnacle out in Florida, and attended numerous meetings in Florida, the Court finds that the convenience of the parties will not be affected substantially by transferring the litigation to Florida.

The contracts between 401k Safe and Pinnacle contain a Florida choice of law clause.  (*See, e.g.*, Doc. 46-10, p. 290, ¶ 18) ("This Agreement shall be governed by and construed under the laws of the State of Florida, County of Palm Beach, without giving effect to the conflict of law provisions thereof.").  This agreement between the parties also weighs in favor of transferring the case to Florida.

401k Safe's choice of forum weighs in its favor because a plaintiff's choice "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

The physical location of documents carries less weight in the transfer analysis than the other convenience and fairness factors, given the ease with which

---

[4] 401k Safe moved to strike Mr. Key's declaration as it applies to Pinnacle's motion to recover against bond, not Mr. Key's declaration concerning transfer.  (*See* Doc. 54).  The Court finds the motion to strike moot as to Pinnacle's motion to recover against the injunction bond.  Because the Court is transferring this action to Florida, Pinnacle's 12(b)(2) motion to dismiss is moot too.

documents may be transferred and shared electronically. This factor is neutral with respect to transfer in this case. *See Game Controller Tech., LLC v. Sony Computer Entertain. Am., LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014) ("The Court has previously found, and repeats here, that producing documents and other files for litigation is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.") (internal quotation marks, alterations, and citation omitted); *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at *4 (S.D. Fla. 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant.").

The "interest of justice" factor under § 1404(a) encompasses "those public-interest factors of systemic integrity and fairness . . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). This "include[s] such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case . . . ." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citations omitted); *see also* Wright, Miller & Cooper, 15 FED. PRAC. & PROC. JURIS. § 3854 (3d ed.) ("[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute . . . ."). Here, Florida is the locus of

operative facts, Florida law governs 401k Safe's claims, 401k Safe traveled to Florida to conduct its business with respect to Pinnacle, and a transfer to the Southern District of Florida would not cause undue delay because this litigation is in its early stages. For these reasons, the interests of justice are served by transferring this case to the Southern District of Florida.

In sum, the § 1404(a) factors weigh in favor of a transfer.

## Conclusion

For the reasons above, the Court denies Pinnacle's motion to recover against the bond. (Doc. 38). The Court grants Pinnacle's motion to transfer this case to the United States District Court for the Southern District of Florida and will enter a separate order requiring transfer. (Doc. 37). The Court asks the Clerk of Court to please term Doc. 54 as moot. The Court denies Pinnacle's motion to dismiss under Rule 12(b)(6) without prejudice.

**DONE** and **ORDERED** this March 16, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE